UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| YAQUB A. NUR, | ) | CASE NO. 1:08 CV 110 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KATHLEEN M. O'MALLEY |
| v. | ) | |
| | ) | |
| CYNTHIA MAUSSER, | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| Defendant | ) | |

On January 15, 2008, plaintiff pro se Yaqub A. Nur filed this action under 42 U.S.C. § 1983 against Ohio Adult Parole Authority ("OAPA") chairperson Cynthia Mausser. Mr. Nur asserts that Ohio adopted new parole guidelines in 2007, which may result in increased punishment if utilized at his future parole eligibility hearing. He seeks an order from this Court requiring the OAPA to consider his parole eligibility using the previous parole guidelines.

On March 14, 2008, Mr. Nur filed a Motion to Amend his Complaint. He requests that this Court order the OAPA to assess his parole eligibility under the parole guidelines in effect at the time of his conviction. He claims that the 2007, 2000, and 1998 guidelines will increase his measure of punishment. He therefore asks that he immediately receive a hearing under 1975 parole guidelines which he believes will correct any past violations of his constitutional rights.

**Background**

Mr. Nur was arrested and charged in connection with the stabbing of Shawn Pettis and Maurice Pettis on April 2, 1988.  See State of Ohio v. Nur, No. 57132, 1990 WL 84288 (Ohio App. 8 Dist. June 21, 1990).  Shawn Pettis died the following day, April 3, 1988 and Mr. Nur was charged with aggravated murder and attempted murder.  Id.  A jury found him guilty of murder on December 16, 1988.  Id.  He was acquitted on the charge of attempted murder.  Id.  Mr. Nur was sentenced to fifteen years to life imprisonment.  After subtracting good time credits, Mr. Nur was eligible for parole consideration after serving ten years of his sentence.

In 1998, and again in 2000, the Ohio Adult Parole Authority ("OAPA") revised its guidelines to evaluate a prisoner's suitability for release on parole.  These guidelines assigned a numerical offense category to an inmate based upon the nature of his or her crime, and a risk score based upon several factors including the inmate's criminal record, and institutional behavior.  The two numbers were then placed on a grid which determined if the inmate was suitable for release, or in the alternative, the recommended number of months the inmate should serve before he or she would again be considered for parole.  These guidelines were not mandatory and the OAPA had the discretion to depart upward or downward from the guideline score.

Mr. Nur was given his first parole eligibility hearing in October 1998.  Applying the 1998 guidelines, the parole board assigned Mr. Nur to offense category 11 and a risk score of 3. This placed Mr. Nur in the guideline range of 210-270 months.  He had to that point served 118 months of his sentence.  The board then stated, "He has a prior commitment for robbery and shooting to kill or wound.  The panel believes he should serve at least the amount of time that

2

equals the middle of the guideline range. This continuance will bring him up to 238 months." (Compl. Ex. C). Mr. Nur's parole hearing was continued for ten years to October 2008.

The OAPA revised its parole guidelines again in 2007. These revisions incorporate the substantive modifications imposed on the OAPA by recent Ohio Supreme Court decisions and give consideration to current sentencing law equivalents for similar offenses under Senate Bill 2. Under the old guidelines, the low end of the guideline range reflected the minimum amount of time that an inmate was thought to be required to serve before he or she should be considered suitable for release. For many inmates, the low end of the guideline range was longer than the minimum sentence imposed on the inmate by the sentencing court. The new guideline ranges now reflect the statutory minimum sentence for each offense as the low end of the guideline range. Furthermore, the offense category assigned to an inmate is now determined by the offense of conviction, and only for those convictions for which an indefinite sentence was imposed. Moreover, under the prior sets of guidelines, murder convictions could be classified in offense category 11, 12, or 13, depending on the circumstances of the crime. The new guidelines classify all murder convictions in offense category 13. This change was designed to correct a misconception created by the previous guidelines:

> Murder was designated as a category 11 or 12, with a corresponding guideline range reflecting a number of months at the high end of the range, instead of Life. Due to the fact that both offenses require a maximum sentence of Life under criminal sentencing law, the offense of Murder was reassigned an Offense Category 13, which reflects Life at the high end of the ranges. By making this change, any previous impression or presumption that an offender convicted of Murder will be released after serving a definitive amount of time and will not have to serve Life is removed.

3

(Compl. Ex. D.)

Mr. Nur contends that use of the 2007 parole guidelines at his October 2008 parole eligibility hearing will be "nearly guaranteed" to result in increased punishment. (Compl. at 4.) He states he has already served 20 years of his sentence. He asserts that under the new guidelines he could be required to serve additional time before being deemed eligible for release. He claims that this "raises and [sic] Ex Post Facto Issue." (Compl. at 5.)

**Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

Mr. Nur claims that the OAPA's use of the 2007 parole guidelines to determine his eligibility for parole violates the Ex Post Facto Clause. The relevant inquiry in an ex post facto claim is whether the new guidelines present a significant risk of increasing the plaintiff's amount

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

of time actually served. See Garner v. Jones, 529 U.S. 244, 255 (2000)("When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the current rule"); Michael v. Ghee, 498 F.3d 372, 380-85 (6th Cir. 2007). Mr. Nur can set forth a claim in one of two ways. First, he can establish an ex post facto violation if the guidelines, on their face, show a significant risk of increased incarceration. Garner, 529 U.S. at 255; Michael 498 F.3d at 384. Second, when the guidelines do not by their own terms show a significant risk, plaintiffs "must demonstrate, by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]." Garner, 529 U.S. at 255; Michael 498 F.3d at 383.

      Mr. Nur does not set forth a valid ex post facto claim at this time. The guidelines on their face do not create a significant risk of increasing the amount of time Mr. Nur actually will serve. Under the 2007 guidelines, the low end of the guideline range for all offenses is the minimum sentence imposed by the sentencing court. The maximum end of the guideline range in category 13, would be Life, which was also imposed upon Mr. Nur by the sentencing court. Therefore, on paper, the applicable guideline range under the 2007 guidelines for an inmate convicted of murder, like Mr. Nur, is the indefinite sentence imposed on him by the sentencing court. This leaves the decision to grant or deny parole within the parameters of indefinite sentence to the complete discretion of the parole board. Because there is no longer a suggested range of time that Mr. Nur should serve before parole should be granted, there is no objective criteria upon which

he can base his claim that he will almost certainly be required to serve a longer term of incarceration than he anticipated after his last parole hearing. There is no ex post facto violation on the face of the guidelines.

Mr. Nur must therefore set forth that the guidelines as applied to him violate the Ex Post Facto Clause. This claim, however, is premature. Mr. Nur's parole hearing is scheduled for October 2008. It is as likely that he will be granted parole release at this next hearing as it is that he will be denied release. He makes no other argument that other inmates in his predicament have experienced incarceration for longer periods. As his claim is based on uncertain or contingent future events that may not occur as anticipated, if at all, the ex post facto claim as applied to Mr. Nur must be dismissed at this time.

Insofar as Mr. Nur is challenging the parole board's use of the 1998 parole guidelines at his hearing at his October 1998 parole hearing, his § 1983 is untimely. Ohio's two year statute of limitations for bodily injury applies to §1983 claims. LRL Properties v. Portage Metro Housing Authority, 55 F. 3d 1097 (6th Cir. 1995). Mr. Nur's only parole hearing to date took place in 1998. This action was filed well beyond the expiration of the two-year statute of limitations period. There would be no purpose in allowing this matter to go forward in view of the fact that it is clearly time-barred. See Fraley v. Ohio Gallia County, No. 97-3564, 1998 WL 789385, at *1 (6th Cir., Oct. 30, 1998)(affirming sua sponte dismissal of pro se §1983 action filed after two year statute of limitations for bringing such an action had expired).

**Conclusion**

Accordingly, this action is dismissed without prejudice pursuant to 28 U.S.C.

§1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

       IT IS SO ORDERED.

                                           s/ Kathleen M. O'Malley
                                           KATHLEEN M. O'MALLEY
                                           UNITED STATES DISTRICT JUDGE

DATED: April 15, 2008

---

[2] 28 U.S.C. § 1915(a)(3) provides:

>  An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.

7